IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

SHAHLA ATAI,

   Plaintiff,

    v.

ALLSTATE INDEMNITY
COMPANY,

   Defendant.

CIVIL ACTION FILE
NO. 1:13-CV-342-TWT

**OPINION AND ORDER**

The Plaintiff seeks partial summary judgment on her claim that the Defendant, Allstate, cannot prove an exclusion from her homeowner's insurance policy. Allstate denied coverage because it believed that the Plaintiff and her ex-husband worked together to vandalize the home and because it believed the Plaintiff concealed or misrepresented material facts in seeking to collect on her policy. The Plaintiff contends that Allstate has only weak circumstantial evidence to support its grounds for exclusion. However, Allstate's evidence is sufficient to create an issue of fact capable of defeating summary judgment.

T:\ORDERS\13\Atai\mpsjtwt.wpd

## I.  Background

The Plaintiff's home in Duluth, Georgia (the "Property") was found thoroughly vandalized on June 7, 2011. The Plaintiff had been out of town since May 21, and the Plaintiff's daughter discovered the vandalism when she went to the Property to retrieve a belonging. The Plaintiff's daughter immediately contacted her father, Shawn Atai, to report the vandalism. Shawn Atai had been divorced from the Plaintiff, Shahla Atai, since February 2011.

The parties dispute the facts surrounding the claims filing process. According to the Plaintiff, she promptly filed a claim and Allstate sent an investigator, Kenneth Wright, to assess the damage. On April 5, 2012, the Plaintiff submitted a list of vandalized contents to Allstate, including the replacement costs of the items, through her public adjuster, Phillip Grandchamp. The list sought to recover $900,913.56, including the policy limits for the contents of the Property in the amount of $549,750, $356,163.56 in structural damage, and discounting the $5,000 deductible. (See Pl.'s Mot. for Partial Summ. J., Ex. F). Although the Plaintiff claimed she lost over $973,000 in property, she only sought the $549,750 policy limit. Allstate examined Grandchamp under oath on May 31, 2012. During his examination he realized his staff

had misreported the price of several items on his list, and on July 2, 2012, he amended his list to reflect the changed prices.[1]

Allstate, which officially denied the Plaintiff's claim on June 29, 2012, paints a different set of facts. Allstate argues that the Plaintiff filed her first claim on November 22, 2011, not April 5, 2012. Only after Allstate examined the Plaintiff under oath on February 24, 2012, and announced its intention to conduct a detailed inventory of the Plaintiff's claimed losses, did the Plaintiff file her second claim on April 5, 2012. (See Shahla Atai Dep. Exs. 1 & 2). Allstate denied that claim on June 29, 2012, because it was fraudulent and because Allstate believed Shawn Atai had committed the vandalism. After the Plaintiff filed this suit on January 31, 2013, Allstate deposed the Plaintiff and again indicated its intention to investigate the Plaintiff's claims for fraud. After the deposition, the Plaintiff sought to submit a renewed list of vandalized items, even though she had stated in the deposition that she stood by her claim completely. (See id. at 47-49). Allstate denied the Plaintiff's request to submit a new list. However, the next day, the Plaintiff announced she had discovered an amendment to her April 5, 2012 claim which had been prepared on July

---

[1] On December 23, 2013, the Plaintiff moved to amend the Expert Report of Phil Grandchamp. Although the Defendant argues in its summary judgment opposition that this amendment is not genuine, the Defendant has not opposed the motion itself and granting the motion will not change the outcome of the Plaintiff's motion for partial summary judgment. Accordingly, the Plaintiff's motion to amend should be granted.

2, 2012. Although this amendment was purportedly submitted by Grandchamp, he testified in his September 2013 deposition that he had done no work for the Plaintiff since his April 5, 2012 report. (Grandchamp Dep. at 9, 47). The Plaintiff now seeks partial summary judgment on the grounds that Allstate cannot meet its burden of showing that an exclusion to the vandalism coverage of the Plaintiff's homeowner's policy applies.

## II. Summary Judgment Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

## III. Discussion

Although the burden is on Allstate to show an exclusion from the homeowner's policy it issued to the Plaintiff, Allstate's evidence here is sufficient to create an issue of fact on each of its grounds for exclusion. See Livaditis v. American Cas. Co. of Reading, Pa., 117 Ga. App. 297, 300 (1968). First, Allstate argues that Shawn Atai, the Plaintiff's ex-husband, worked with the Plaintiff to commit the vandalism. This argument implicates two provisions in the homeowner's insurance policy:

> **Losses We Do Not Cover Under Coverages A and B: We** do not cover loss to the property described in **Coverage A – Dwelling Protection or Coverage B – Other Structures Protection** consisting of or caused by:… 9. Intentional or criminal acts of or at the direction of any **Insured person**, if the loss that occurs: (a) may be reasonably expected to result from such acts; or (b) is the intended result of such acts…
>
> **Losses We Do Not Cover Under Coverage C: We** do not cover loss to the property described in **Coverage C – Personal Property Protection** caused by or consisting of:… 9. Intentional or criminal acts of or at the direction of any **Insured person**, if the loss that occurs: (a) may be reasonably expected to result from such acts; or (b) is the intended result of such acts….This exclusion applies regardless of whether or not the **Insured person** is actually charged with or convicted of a crime

(Pl.'s Mot. for Partial Summ. J., Ex. A at 6, 10-11). The Plaintiff argues that these exclusions do not apply because the Defendant only relies on bare circumstantial evidence to support its allegations that Shawn Atai committed the vandalism. However, the Defendant's evidence is entitled to more consideration than the Plaintiff suggests. First, an investigator hired by the Plaintiff, Kim Gilliam, concluded from the nature of the vandalism itself that it was either the product of a fraudulent insurance

claim or of a hate crime. But Gilliam found no indications of a hate crime. (See Gilliam Dep. at 80). Further, Gilliam felt that Shawn Atai was "very involved in [the] matter" and "was just too involved with [the Property] for it not to be his house." (Id. at 22, 48-49). The investigator also felt that the vandalism was not the usual vandalism she had seen committed by strangers. (Id. at 53, 97-98). Although the Defendant's evidence is circumstantial, the Defendant is essentially trying to show that the Plaintiff committed fraud, and "[p]roof of fraud is seldom ever susceptible of direct proof." Levine v. Suntrust Robinson Humphrey, 321 Ga. App. 268, 274 (2013) (quoting Almond v. McCranie, 283 Ga. App. 887, 889 (2007)). While this evidence does not prove that the Plaintiff and Shawn Atai were working together to defraud Allstate, the evidence does create an issue of fact as to whether the Plaintiff directed Shawn Atai to commit any intentional or criminal acts that would trigger the policy exclusions.

Allstate also denied coverage under the homeowner's policy on an exclusion on the grounds of misrepresentation:

> **We** do not cover any loss or **occurrence** in which any **Insured person** has concealed or misrepresented any material fact or circumstance.

(Pl.'s Mot. for Partial Summ. J., Ex. A at 5). Here too the Defendant can point to sufficient evidence to create an issue of fact concerning whether the Plaintiff concealed or misrepresented any material fact or circumstance. The Defendant's response brief lists several reported losses where the corresponding replacement costs

were so disproportionate as to suggest fraudulent activity. A decorative plate bearing a price tag for $20.50 was listed with a $195 replacement cost. A patio lantern bearing a price tag for $12.00 was listed with a $306 replacement cost. Two wooden frames were listed as worth $287.97 and two vases were listed as worth $358.00, but the price tags on the frames showed a cost of $11 each and the tags on the vases showed a cost of $37.50 each. The UPC code on a bowl allegedly worth $49.99 showed that the bowl was purchased for $2.39. Additionally, the Defendant identified for sale online for $50 an exact Herend Clay pitcher that the Plaintiff claimed was worth $8,525. (Wright Aff. ¶ 8). This evidence, let alone the Plaintiff's multiple amendments to her claim, is sufficient to create an issue of fact capable of defeating summary judgment.

The Plaintiff, however, contends that any alleged misrepresentation is not dispositive under Allstate Ins. Co. v. Baugh, 173 Ga. App. 615 (1985), because the Plaintiff is seeking to recover far more than the policy provides. In Baugh, the court held that some misstatements by the insured as to the value of property destroyed in a fire did not trigger a policy exclusion because "it was not shown that these misstatements were willfully or intentionally made for the purpose of defrauding the company [because the evidence clearly showed that the property destroyed] exceeded the amount of insurance upon all the personalty." Id. at 616. Contrary to the Plaintiff's assertion, this case did not create a rule that misrepresentations of the value of

destroyed property are meaningless for purposes of policy exclusions when the insurance policy limit is clearly surpassed. Rather, the case held that there was an issue of fact as to whether the plaintiff's misstatements were fraudulent in part because the overall recovery sought was beyond the policy limit. See <u>Barber v. Wausau Underwriters Ins. Co.</u>, 184 Ga. App. 479 (1987) (discussing <u>Baugh</u>). In <u>Barber</u>, the court concluded that evidence that the damage to an insured's home amounted to only one-fifth of the insured's asserted claim was sufficient for the claim of fraud to have gone to a jury. <u>Id.</u> Here, like in <u>Barber</u>, there is some evidence that the claimed value of many lost items far exceeds their actual value. Accordingly, the evidence suggesting fraud is sufficient to create an issue of fact and defeat the Plaintiff's motion for partial summary judgment. The Plaintiff's motion for partial summary judgment should be denied.

### IV.  Conclusion

For the reasons set forth above, the Plaintiff's Motion for Partial Summary Judgment [Doc. 39] is DENIED. The Plaintiff's Motion to Amend the Expert Report of Phil Grandchamp [Doc. 36] is GRANTED.

SO ORDERED, this 11 day of April, 2014.

/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge